IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PAUL OSSMAN,<br><br>Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>Defendant. | CIVIL ACTION FILE NO.<br><br>1:19-cv-3200-SDG-JKL |

**ORDER**

This employment discrimination case is presently before the Court on Defendant's Motion to Compel Discovery and Motion for Sanctions [Doc. 49 ("Motion to Compel")]; its Supplemental Motion for Sanctions [Doc. 53 ("Supplemental Motion")]; and Plaintiff's request that the Court compel production of a document withheld on attorney work product protection. Plaintiff has filed a consolidated response to the two motions [Doc. 55], and on March 26, 2021, a discovery hearing was held on the issues. For the reasons that follow, Defendant's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**, its Supplemental Motion is **DENIED**, and Defendant's work product objection is **OVERRULED**.

**BACKGROUND**

Plaintiff filed this race discrimination action nearly 21 months ago, but did little to prosecute the case until recently.[1] [*See* Doc. 1.] After delays occasioned by Plaintiff's exhaustion of his race, age, and gender discrimination claims before the EEOC (after which, Plaintiff failed to amend his complaint to add any Title VII and ADEA claims[2]) and his request for meditation (which ended when Plaintiff refused to provide a good faith settlement demand), discovery commenced in September 2020. [*See* Docs. 30-37.] On September 14, 2020, Defendant served Plaintiff with interrogatories and requests for production of documents. [*See* Doc. 38.] Defendant also moved for entry of a confidentiality protective order, which Plaintiff refused to consent to until just before the deadline his opposition. [*See* Docs. 40, 41, 42.] Meanwhile, Plaintiff failed to timely respond to Defendant's discovery requests, and only did so in late October after Defendant's counsel formally conferred with Plaintiff's counsel. Even then, Plaintiff did not produce any documents.

[1] A more thorough recitation of the procedural background of this case may be found in the Court's January 19, 2021 discovery order, in which the undersigned ordered Plaintiff to provide complete discovery responses.

[2] Plaintiff proceeds primarily under 42 U.S.C. § 1981 ("Section 1981"). [*See* Doc. 11.]

In November 2020, Defendant's counsel sent another conferral letter, specifying that the responses to the requests for production were filled with improper objections, that several interrogatories were deficient, that it had not received any document production. Despite more calls and emails, Plaintiff failed to respond until Defendant contacted chambers in December, at which time, Plaintiff's counsel asked for ten more days to resolve the matter. Despite that, Plaintiff failed to communicate with Defendant about the ongoing discovery problems. When Defendant again contacted the Court, Plaintiff's counsel appeared again to say he would "resolve the matter" immediately.[3] The following day, Plaintiff provided a limited, unlabeled, and undelineated production of documents. Plaintiff did not, however, supplement his written discovery objections and responses. On December 30, Defendant's counsel emailed chambers, alerting the Court that no progress had been made on the remaining discovery problems. The Court set a hearing for January 19, 2021, and requested that the parties provide submissions to chambers outlining the substance of their issues. [*See* Doc. Entry

---

[3] Plaintiff's counsel later identified the loss of multiple family members as the reason he failed to acknowledge the communications from opposing counsel and the Court.

dated Dec. 30, 2021.] Plaintiff failed to provide any submission or attend the hearing.[4]

Following the hearing, and considering the merits of Defendant's positions, the Court overruled many of Plaintiff's boilerplate objections to the relevant discovery requests and ordered that Plaintiff supplement his discovery responses, including as it relates to his efforts to mitigate damages.[5] [Doc. 45.] According to Defendant, since that time, "Plaintiff's document production continues to exclude relevant documents"—in particular, his 2019 or 2020 tax returns, despite having confirmed that he has access to both. [*See* Doc. 49 at 2-3; Doc. 49-1 at 50-52.] In response to the relevant request asking for his tax returns and other financial information, Plaintiff raised no objection and, in fact, produced his 2018 tax return;

[4] Plaintiff's counsel received emails from chambers staff about the hearing on December 30, 2020 and January 14, 15, and 19, 2021; a notice of hearing on December 30, 2020; and a telephone call on January 19, 2021. None of the communications were answered or otherwise acknowledged.

[5] After the Court's order, Plaintiff's counsel emailed to Court to apologize, explaining that his absence was due to his preoccupation with obtaining a COVID-19 vaccination. He did not, however, explain his failure to respond to multiple communications from Defendant and the Court, and did not address his failure to submit a statement on the discovery matters addressed at the hearing.

however, he withheld those for 2019 and 2020. [*See* Doc. 49 at 3; Doc. 53-1 at 55.][6]

On February 18, 2021, Defendant deposed Plaintiff. [*See* Doc. 49-1 (Pl. Dep.).] Plaintiff's counsel did not agree to reserve any objections (*see* Pl. Dep. 111-12), and hundreds of objections were made during the course of questioning by both sides (*see generally*, *id.*; *see also id.* at 287 (index cataloguing the objections)). Plaintiff's counsel made numerous objections, including many speaking objections (*see id.* at 47-143), but when it came time for him to question his own client, counsel quickly became frustrated with defense counsel's objections (*id.* at 147-48, 154-58), and contacted chambers to request an audience with the Court (*see id.* at 159-62, 166-171). However, after speaking with one of the law clerks, counsel decided to withdraw his request. (*Id.* at 171-75.) Plaintiff's counsel also utilized inordinately lengthy leading questions when it appeared he did not care for the response Plaintiff initially provided. (*See e.g.*, *id.* at 196-97, 228-29.) Despite any problems, Defendant has not sought to reopen Plaintiff's deposition.

---

[6] Elsewhere, Plaintiff objected to an interrogatory requesting that he complete a "Tax Record Authorization," stating that the Authorization itself requested "confidential information" and is "not proportionate to the claims and defenses in this case." [*See* Doc. 53-1 at 45.] Plaintiff, however, never objected to producing the tax returns themselves.

Also in mid-February, Plaintiff served discovery requests on Defendant. The responses were due on the final day of discovery. Just before the March 26 hearing, Plaintiff made a request that the Court address an equal employment opportunity form (the "EEO Form") concerning Plaintiff's discharge, which Defendant withheld from its production on the basis of attorney work product protection.

On March 15, 2021, the final day of discovery, Plaintiff deposed Defendant's corporate representative, Laurel Berenguer. Once again, Plaintiff's counsel refused to reserve objections, and again, became frustrated with defense counsel's objections. This time, however, Plaintiff's counsel followed through on his threats to involve the Court, and the undersigned held a brief hearing on the propriety of Defendant's objections. Finding no error in Defendant's preservation of its objections, the Court declined to intervene. The Court has since reviewed video of the deposition, and finds no basis to conclude that any objection was inserted in bad faith.[7] On the other hand, on several occasions, Plaintiff's counsel demeaned and berated opposing counsel and Ms. Berenguer when confronted with objections

[7] Video of the deposition, as well as clips of those portions highlighted in Defendant's Supplemental Motion, were provided by Defendant to the Court and to Plaintiff. The Court will refer to hour and minute of video when citing the deposition, since the written transcript is not yet available.

or testimony, respectively, that he did not care to receive. (*See e.g.*, Berenguer Dep. at 1:02-1:05, 3:31-3:32, 4:14-4:17, 5:13-5:14, 6:39-6:42.) Indeed, after Plaintiff's counsel repeatedly raised his voice and interrupted Ms. Berenguer, defense counsel suspended the deposition approximately 20 minutes early. (*Id.* at 6:46-6:48.)

In its present motions, Defendant seeks to compel production of Plaintiff's 2019 and 2020 tax returns and requests sanctions for Plaintiff's counsel's conduct at the two depositions discussed above. [Docs. 49, 53.] Much of Plaintiff's response bears on what his counsel believes are the strengths of his case, suggesting that because his "evidence . . . is so overwhelming," Defendant's motions are simply an attempt "to multiply these proceedings unnecessarily, before its client settles." [Doc. 55 at 2; *see also id.* at 1-6.] Following that discussion, Defendant briefly argues that the tax returns are "unnecessary in this case as complete information of his post defendant income is complete," given that he has offered testimony on the point and has produced a W-2. [*Id.* at 6-7.] He also complains that the tax returns include confidential information about Plaintiff's wife's income. As to the issue of sanctions, Plaintiff argues in two short sentences that Defendant's complaints are "sophomoric," that his counsel's conduct "pales" in

comparison to the abuse occasioned by defense counsel's objections, and that the issues should have been worked out by counsel. [*Id.* at 7-8.]

At the March 26, 2021 hearing, the Court heard argument from the parties, which largely mirrored what is contain in their briefs. Additionally, the Court reviewed the EEO Form and heard argument on the merits of Defendant's assertion of work product protection. The Court addresses each of the issues raised below.

**PLAINTIFF'S TAX RETURNS**

In its requests for production, Defendant asked for "any and all documents evidencing any income, wages, bonuses or benefits received by you from April 8, 2019 through the present, including, but not limited to, tax returns, pay stubs, direct deposit statements, W-2 forms and IRS 1099 forms." [Doc. 53-1 at 55.] Plaintiff did not object, and his response stated that he "will produce responsive, non-privileged documents regarding his income since the time of termination to the extent that such documents are in his possession or available to him." [*Id.*] There appears to be no dispute that Plaintiff has his tax returns for 2019 and 2020 but has not produced them.

Employment discrimination plaintiffs who have been discharged "are presumptively entitled to back pay." *Lathem v. Dep't of Children & Youth Servs.*,

172 F.3d 786, 794 (11th Cir. 1999); *see also Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1184 (11th Cir. 2010) (clarifying that backpay is available under both Title VII and Section 1981). "Back pay is the difference between the actual wages earned [at subsequent employment] and the wages the individual would have earned in [her original] position that, but for the discrimination, the individual would have attained." *Akouri v. Florida Dep't of Transp.*, 408 F.3d 1338, 1343 (11th Cir.2005) (quotation omitted). Relatedly, plaintiffs are required to "mitigate their damages through reasonably diligent efforts to seek employment that is substantially equivalent." *Lathem*, 172 F.3d at 794.

As such, Plaintiff's pay information is directly relevant to his claim for damages, as well as any mitigation, and is therefore discoverable in this case. Although Plaintiff has offered some testimony on his various sources post-separation income and provided a W-2, the tax returns offer a more complete and comprehensive view of his income, and the Court does not view it as unnecessarily duplicative here. And because Plaintiff has access to his tax returns; did not object to producing them in his response to Defendant's request for production; and has not explained how producing them constitutes an undue burden, is disproportionate to the needs of the case, or is otherwise protected, he must produce them for any

period of time during which he seeks backpay, presumably including 2019 and 2020. To the extent Plaintiff remains troubled by the production of his wife's confidential financial and tax information, he may produce the tax returns pursuant to the protections provided by the Confidentiality Protective Order entered in this case. [Doc. 43.]

Based upon the foregoing, the Court **ORDERS** Plaintiff to produce, no later than **March 31, 2021**, tax returns for the any period of time for which he seeks backpay damages.

## DEPOSITION CONDUCT

Defendant seeks sanctions for Plaintiff's counsel conduct at the two depositions discussed above, and appears to rely on Federal Rules of Civil Procedure 30 and 37 to support of its request for sanctions.[8] [*See* Docs. 49, 53.]

[8] There are other grounds to support a request for sanctions. 28 U.S.C. § 1927 permits the Court to sanction an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Similarly, the Court enjoys the inherent power to sanction attorneys who conduct litigation "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Before imposing sanctions under either Section 1927 or its inherent powers, however, the Court must find that an attorney acted in bad faith, which Defendant does not argue was present here. *See, e.g., Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("Bad faith is the touchstone" to an award of sanctions under Section 1927); *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir.

Rule 30 specifically governs misconduct in the context of a deposition and provides that "appropriate sanctions" may be imposed for conduct that "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Rule 37 also provides that the party whose conduct necessitated the motion may be required to pay reasonable fees and expenses unless the conduct was substantially justified or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5). "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and [e]nsure the integrity of the discovery process." *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) (citing *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982)).

Although the undersigned cannot condone Plaintiff's counsel's conduct during the depositions in question—or indeed, during his various interactions (and absences) before the Court—I also cannot conclude that the sanctions are warranted in this instance, for two primary reasons. First and foremost, Defendant has not identified any concrete prejudice suffered. The conduct presented to the Court does not appear to have frustrated Defendant's examination of Plaintiff, and to the extent

---

2001) ("The key to unlocking a court's inherent power is a finding of bad faith.") (citation omitted).

it impeded Ms. Berenguer's deposition, she remains available to provide any testimony Defendant requires. *Compare Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV, 2006 WL 8433925, at *3 (S.D. Fla. Dec. 27, 2006) (declining to impose sanctions for three instances of "misconduct" or discourtesy during the course of depositions that were nevertheless completed), *with Sicurelli v. Jeneric*, No. 03CV4934(SLT)(KAM), 2005 WL 3591701, *8-9 (E.D.N.Y. Dec. 30, 2005) (imposing sanctions in the form of costs—but not attorney fees—based upon counsel's repeated ad hominem comments, unprovoked personal attacks on opposing counsel, and absence during the middle of the deposition, which necessitated re-deposing the witness). Indeed, the parties were able to move forward with both depositions after contacting the Court over the problems arising therein, and Defendant has not sought additional testimony from Plaintiff. *See*, *e.g.*, *Phillips v. Mfrs. Hanover Tr. Co.*, No. 92-CV-8257 (KTD), 1994 WL 116078, at *4 (S.D.N.Y. Mar. 29, 1994) (declining to impose sanctions where counsel's actions did not have the effect of preventing the deposition from being completed).

Second, sanctions are appropriate only where the deposition conduct at issue is egregious and repetitive, which is not the situation here given the relatively limited exchanges presented between Plaintiff's counsel and the witnesses.

*Compare Pendlebury*, 2006 WL 8433925, at *3 *and Pescia v. Auburn Ford-Lincoln Mercury Inc.*, 177 F.R.D. 509, 511 (M.D. Ala. 1997) (hostile, repetitive, and argumentative questioning was not sanctionable where it was not part of "concerted effort to prolong the deposition"), *with O'Brien v. Amtrak*, 163 F.R.D. 232 (E.D. Pa. 1995) (counsel spoke almost as much, if not more, than the deponents) *and Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292, 293 (S.D.N.Y. 1987) (finding sanctions appropriate where attorney engaged in constant interruptions and ad hominem attacks that were harassing, wasteful, vexatious, and appeared on 91 percent of the transcript). Although there were "heated exchanges" during course of the depositions, they were comparatively "brief and did not significantly frustrate the [deposition's] progress." *Hauge v. Celebrity Cruises*, Inc., No. 95 Civ 4648, 2001 WL 546519, at *3 (S.D.N.Y. May 23, 2001).

Ultimately, "the type of misconduct alleged here was not so egregious as to be abusive or sanctionable." *Pendlebury*, 2006 WL 8433925 at *3. Even so, the undersigned is troubled by the tone of the depositions and notes the Court's displeasure with the lack of courtesy displayed by Plaintiff's counsel there and in his interactions with the Court, and cautions that any further repetition of the behavior displayed during the depositions and elsewhere during discovery may

later warrant an imposition of sanctions. That said, the Court is confident that counsel for both parties—officers of the Court, no less—will comport themselves professionally throughout the remainder of this case.

**EEO FORM**

Finally, Plaintiff complains that Defendant has withheld the EEO Form on the basis of work product protection. The EEO Form is a spreadsheet that asks for and collects information about Plaintiff's employment, the events leading to his discharge, other employees disciplined for similar infractions, and other employees in comparable positions to Plaintiff. At the March 26 hearing, defense counsel[9] explained that the EEO Form was prepared by Ms. Berenguer, a human resources representative, at the direction of Defendant's in-house legal counsel in connection with Plaintiff's discharge, in order to assess possible adverse impacts and other risks associated with his discharge vis-à-vis various demographic groups.

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety,

[9] The Court notes that attorney Lindsay McCall spoke on behalf of Defendant on this issue in what was her first oral argument. Ms. McCall was well prepared and argued ably, albeit in a losing effort.

indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Work product can be reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015) (per curiam) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)) (quotation marks and alteration omitted). The party invoking the work product doctrine bears the initial burden of showing that the documents it has withheld were prepared in anticipation of litigation. *Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 684 (N.D. Ga. 2012). "This burden may be satisfied through a detailed privilege log and affidavits from counsel, the party, or the expert, and also by any of the traditional ways in which proof is produced in pretrial proceedings." *Id.*

Here, the Court finds that Defendant has not satisfied its burden to show that the EEO Form was prepared in anticipation of litigation. When assessing whether materials were created in anticipation of litigation, there are two "related, but nonetheless distinct, concepts" at play: a temporal requirement and a motivational requirement. *U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1324 (N.D. Ga. 2015); *see also Fojtasek v. NCL (Bah.) Ltd.*, 262 F.R.D. 650, 654 (S.D. Fla. 2009) ("[A] court must determine when a contested document was

created, and why that document was created in assessing the applicability of the work product doctrine."). To meet the temporal component, the document must have been created before or during litigation. *Bibby*, 165 F. Supp. 3d at 1324. Here, it appears that the EEO Form was created before this action was filed. Accordingly, there is no serious dispute that the temporal element is met here.

As to the motivational component, however, Defendant has not met its burden. Under this prong, "the Court must determine why the documents were created in order to assess the applicability of the work product doctrine." *Bibby*, 165 F. Supp. 3d at 1324. This is not a simple task where more than one factor motivates the creation of the documents at issue. Complicating the analysis is that the law in the Eleventh Circuit appears to be unsettled.[10] Some courts in this Circuit have concluded that they are bound to follow the "primary motivating purpose" test that the former Fifth Circuit articulated in *United States v. Davis*, 636 F.2d 1028, 1031, 1038 (5th Cir. Unit A Feb. 1981). *See, e.g., Tillman v. C.R. Bard, Inc.*, No. 3:13-cv-222-J-34JBT, 2015 WL 1062182, at *3 (M.D. Fla. Mar. 10, 2015)

[10] A recent survey of Eleventh Circuit case law observed that the division remains, and that the Court of Appeals still has not established the definitive test. *See Holladay v. Royal Caribbean Cruises, Ltd.*, 334 F.R.D. 628, 632 (S.D. Fla. 2020).

(collecting cases). Under that test, a document is protected work product "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Davis*, 636 F.2d at 1040 (emphasis added). Other courts have concluded that *Davis* is inapplicable (either because it is factually distinguishable or its pronouncement was dicta), and instead apply the "because of" test adopted in other circuits. *Adams v. City of Montgomery*, 282 F.R.D. 627, 634 (M.D. Ala. 2012) (citing cases that recognize the "because of" test); *Regions Fin. Corp. v. United States*, No. 2:06-CV-895-RDP, 2008 WL 2139008, at *4 (N.D. Ala. May 8, 2008) (concluding that the primary motivating purpose test of *Davis* is dicta and that *Davis* is factually distinguishable). Under the "because of" test, the court asks whether, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared … because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024, at 343 (1994) and collecting cases)); *see also Bibby*, 165 F. Supp. 3d at 1325.

Regardless, under either test, Defendant fails to meet its burden. At the March 26 hearing, counsel for Defendant conceded that Defendant's EEO Form—

both in general and as it pertained to Plaintiff—is not completed in anticipation of litigation as much as it is used by Defendant's in-house counsel to assess whether employment actions have possible adverse impacts on various demographic groups of employees. While ensuring equitable and lawful treatment of employees is a commendable goal, the Form does not contain any legal analysis or litigation strategy, and the Court is not persuaded that the Form's collection of data surrounding Plaintiff's discharge was made either "because of" the prospect of litigation or that the primary motivating purpose behind the creation of the document was to aid in possible future litigation. That it is now relevant to the present litigation is immaterial, since a party must anticipate possible litigation at the time the document was created for the protection to apply. *See Holladay*, 334 F.R.D. at 631 (citing *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 699-700 (S.D. Fla. 2007)). There has been no suggestion that Defendant anticipated litigation from Plaintiff when the Form was created. Rather, the EEO Form was prepared in the ordinary course of business and would have been created "in essentially similar form irrespective of litigation." *Id.* (quoting *Allied Irish Banks v. Bank of Am.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007) (quotation marks omitted)).

As such, Defendant fails to meet its burden of showing that the EEO Form is work product protected, and the Court overrules Defendant's objection to producing it.

Based upon the foregoing, the Court **ORDERS** Defendant to produce the EEO Form no later than **March 31, 2021**.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**, and its Supplemental Motion is **DENIED**. Plaintiff is **ORDERED** to produce, no later than **March 31, 2021***,* tax returns for the any period for which he seeks backpay damages. The Court **DECLINES** to impose sanctions at this time. Defendant's work product objection to producing the EEO Form is **OVERRULED**, and Defendant is **ORDERED** to produce the Form no later than **March 31, 2021**.

IT IS SO ORDERED this 29th day of March, 2021.

John K. Larkins III

JOHN K. LARKINS III
United States Magistrate Judge