## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PAUL OSSMANN,
    Plaintiff,

v.

MEREDITH CORPORATION,
    Defendant.

Civil Action No.
1:19-cv-03200-SDG

## <u>OPINION AND ORDER</u>

This matter is before the Court on the Final Report and Recommendation (the R&R) of United States Magistrate Judge John K. Larkins III, which recommends that Defendant Meredith Corporation's (Meredith) motion for summary judgment [ECF 62] be granted. Plaintiff Paul Ossmann has filed objections to the R&R [ECF 87],[1] and sought leave to file a reply to Meredith's opposition brief [ECF 93]. After careful review of the record and the parties' briefing, the Court **GRANTS** Ossmann's motion for leave to file a reply and **SUSTAINS IN PART AND OVERRULES IN PART** Ossmann's objections. The Court comes to the same conclusion, however, **ADOPTS** the R&R as modified, and **GRANTS** Meredith's summary judgment motion.

---

[1] Ossmann filed a notice, ECF 86, withdrawing his initial objections, ECF 85, and filed new, corrected objections the same day. ECF 87. The Court has considered the corrected objections and will refer to them throughout this Order.

## I.     BACKGROUND

The R&R contains a comprehensive description of the facts and procedural history,[2] which the Court will not repeat. For context, this is an employment discrimination suit brought under 42 U.S.C. § 1981 for disparate treatment and wrongful termination on the basis of race with a corresponding breach of contract claim.[3] Ossmann claims that he was fired from his job as a meteorologist because he is white. Ossmann's former employer, Meredith, claims that he was fired because he sexually harassed female employees.[4]

Judge Larkins concluded that there is no genuine dispute of material fact as to whether the alleged sexual harassment was pretext for discrimination and that Meredith is entitled to judgment as a matter of law.[5] Ossmann objects to the R&R.[6]

---

[2]   ECF 79, at 14–27. Ossmann does not generally object to the factual findings in the R&R, though he objects to Judge Larkins's characterization of some of the facts as undisputed. The Court finds no clear error in the R&R's recital of the facts to the extent Ossmann has not objected to them and they are therefore adopted. To the extent Ossmann has objected to particular factual conclusions, the Court will address them as necessary.

[3]   *Id.* at 27–28. As recognized in the R&R, Ossmann abandoned his claims for a hostile work environment under § 1981, as well as all of his claims under Title VII of the Civil Rights Act and the ADEA.

[4]   *Id.* at 1.

[5]   *Id.* at 73–79.

[6]   ECF 87.

Meredith has filed a response to Ossmann's objections,[7] and Ossmann moved for leave to file a one-page reply to Meredith's response.[8] Though the reply does not alter the Court's conclusion, it has considered it nonetheless and grants Ossmann's motion for leave to file.

## II.    LEGAL STANDARD

A party challenging a report and recommendation issued by a United States Magistrate Judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). The district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

Absent objection, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and need only satisfy itself that there is no clear error on the face of the record. Fed. R. Civ. P. 72(b). "Frivolous, conclusive, or general

---

[7]    ECF 92.

[8]    ECF 93.

objections need not be considered by the district court." *Schultz*, 565 F.3d at 1361 (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

## III.   ANALYSIS

Ossmann raises nine objections, with multiple subparts, to the R&R: (1) that the R&R incorrectly found that Corporate Human Resources Director Kandis Bock was not the final decisionmaker for his firing; (2) that the R&R wrongly accepted Meredith's evidence of its reason, rather than Bock's reason, for firing Ossmann; (3) that the R&R incorrectly found that no direct evidence showed that Bock considered Ossmann's race in approving his termination; (4) that the R&R improperly discounted Ossmann's testimony regarding written disciplinary warnings; (5) that the R&R improperly rejected the inference that a written discipline would only be issued for admitted conduct; (6) that the R&R wrongly excluded from consideration Ossmann's declaration, submitted in opposition to summary judgment, as a sham; (7) that the R&R misapplied the law on the discriminatory discharge claim; (8) that the R&R incorrectly rejected Ossmann's convincing mosaic argument; and (9) that the R&R incorrectly recommended summary judgment be granted on Ossmann's breach of contract claim.

Many of Ossmann's objections are interrelated or depend on one another, and so the Court will address them in a different order. The Court will first address

Ossmann's objections relating to Bock being considered the final decision maker. Next, the Court addresses Ossmann's objection to the R&R's "sham affidavit" finding. The Court will then address, to the best of its ability, Ossmann's objections and argument that a jury may only infer that Meredith imposed discipline for conduct that Ossmann admitted. Finally, the Court will address the objections at the heart of this dispute—whether there is either direct or circumstantial evidence supporting Ossmann's claim for discrimination that preclude dismissal as a matter of law.

Though the briefing in this case is extensive, with Ossmann's objections totaling 62 pages,[9] the ultimate issue is quite simple—does a disputed question of material fact exist as to whether the alleged sexual harassment of his female co-workers was pretext for Ossmann's termination because he is white. Though the Court must first confront Ossmann's army of strawmen arguments, it ultimately agrees with Judge Larkins that there is no genuine dispute of any material fact as to why Meredith fired Ossmann. Meredith is entitled to summary judgment.

---

[9]   *Id.* Ossmann's objections far exceed the number of pages permitted under the local rules, even though he did not seek leave to exceed the page limit. LR 7.1(D), NDGa. Meredith did not object to the excess pages, however, and given the number of issues raised the Court will exercise its discretion and consider all of Ossmann's objections. LR 7.1(F) NDGa.

### A.    Kandis Bock as the Final Decision Maker (Objection 1)

Ossmann objects to Judge Larkins's finding that Kandis Bock, the Vice President of Human Resources for Meredith who worked at Meredith's corporate headquarters, was not the final decisionmaker with respect to Ossmann's termination.[10] Judge Larkins concluded that Bock merely "rubberstamped" the recommendation by Lyle Banks and Steve Doerr, Ossmann's Atlanta-based supervisors, because there is no evidence showing what information she considered in reviewing Banks and Doerr's recommendation.[11] The Court disagrees and sustains Ossmann's objection because there is, at the very least, a dispute of material fact as to whether Bock was a decisionmaker.

Though the Eleventh Circuit has not defined a "standard" for whether someone is a decisionmaker for purposes of an adverse employment action, it has provided guidance on whether someone is ***not*** a decisionmaker. In *Clover v. Total System Services, Inc.*, the Eleventh Circuit found that an assistant vice president of a human resources department was not a decision-maker because, although it was her general practice to review and evaluate termination decisions, there was no evidence from which a jury could infer that she "actually had the authority to

---

[10]    ECF 87, at 9–12.

[11]    ECF 79, at 35.

overrule the decision" to terminate the plaintiff and, furthermore, that the undisputed evidence showed that she never made a recommendation regarding termination. 176 F.3d 1346, 1356 (11th Cir. 1999). The Eleventh Circuit later distinguished *Clover* in *Cid v. City of Miramar*, in which it found that a question of fact existed as to whether a human resources director was a decisionmaker because there was evidence that he "reviewed and approved" of the termination and that doing so was part of his job. 810 F. App'x 816, 822 (11th Cir. 2020).

Here, there is undisputed evidence that "corporate" had to review the termination recommendation of Banks and Doerr;[12] that the recommendation was sent to Bock, who works at the corporate office, along with demographic data about Ossmann;[13] and that corporate ultimately approved the termination.[14] This is enough to raise a question of fact as to whether Bock was a decisionmaker, so Ossmann's objection is sustained.

### B.   Ossmann Failed to Establish Evidence of Bock's Discriminatory Intent (Objections 2 and 3)

Assuming that Bock was the final decisionmaker, Ossmann argues that the Court can draw a reasonable inference that she reviewed the documentation sent

---

[12]   ECF 62-14, at 165–66 (Berenguer Depo. at 163:20-164:2).

[13]   Berenguer Depo. at 11:12–12:2, 20:24–21:11; ECF 62-21, at 8.

[14]   Berenguer Depo. at 172:11–18.

by the Atlanta-based Human Resources director, and that this information—specifically, an EEO Analysis form—is direct evidence of discrimination because it refers to Ossmann's race as part of a "risk analysis."[15] Ossmann also argues that Meredith failed to rebut his *prima facie* case of discrimination because it failed to produce evidence of Bock's justification for firing him.[16] Ossmann objects to Judge Larkins's findings to the contrary.

The Court agrees with Ossmann that it is a reasonable inference, which the Court must draw in his favor, that Bock reviewed the EEO Analysis form prior to approving his termination.[17] It is particularly reasonable when there is no evidence of what Bock reviewed prior to making her determination.

However, the Court does not agree that the EEO Analysis form is direct evidence of discrimination or that Meredith failed to offer a legitimate reason for Bock's decision. The reason for both is the same; if the Court infers that Bock reviewed the EEO Analysis, it must infer that she read the whole analysis, which includes a description of why Ossmann's supervisors recommended termination

---

[15]   ECF 87, at 23–24.

[16]   ECF 87, at 19–23.

[17]   Berenguer Depo. at 11:8–19; 178:23-179:14.

and performance concerns related to sexual harassment.[18] It would be unreasonable and purely speculative to infer that Bock only reviewed and only relied on the demographic information and the "risk analysis" section of the EEO Analysis form. The Court will not "pile inference[ ] upon inference[ ]" to draw only the conclusion Ossmann desires. *Donnelly v. Wal-Mart Stores E. LP*, No. 2:19-CV-14112, 2020 WL 704907, at *2 (S.D. Fla. Feb. 12, 2020) *aff'd*, 844 F. App'x 164 (11th Cir. 2021).

### 1. Direct Evidence

Ossmann does not dispute, nor could he, that Judge Larkins applied the correct legal standard.[19] "Direct evidence is evidence which, if believed, proves the existence of a fact without inference or presumption . . . 'only the most blatant remarks, whose intent could be nothing other than to discriminate on the protected classification' are direct evidence of discrimination." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002) (citations and punctuation omitted) (quoting *Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999)). A statement similar to "fire Ossmann—he is white," for example, would constitute direct evidence of discrimination. *See Earley v. Champion Int'l*

---

18   ECF 71-4, at 2.

19   ECF 70, at 30.

*Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("One example of direct evidence would be a management memorandum saying, 'Fire Earley—he is too old.'").

Ossmann argues that the EEO Analysis form is direct evidence of discrimination because it included a "risk analysis," which identifies Ossmann's race as well as the races of comparable employees.[20] Ossmann argues that this analysis is equivalent to saying "Fire Ossmann—he's white, so his dismissal won't negatively impact the weather group's racial mix."[21] But even if this was an accurate characterization, which it is not, it still requires an inference that the lack of a negative impact on the group's racial mix means that Ossmann must have been fired because he is white. Moreover, as noted, the EEO Analysis form also contained information about Ossmann's performance issues and the reason for his termination recommendation, so to find that the form itself evidences racial discrimination, a trier of fact would have to *infer* that the risk analysis is more important than the other parts of the form and the basis for Bock's decision. It follows that the EEO form is not *direct* evidence of discrimination, and the Court need not weigh it to arrive at that commonsense conclusion. Ossmann's objection is overruled.

---

20   ECF 87, at 23–24.

21   *Id.* at 24.

## 2. Circumstantial Evidence

Ossmann also argues that summary judgment is improper because, under the *McDonnell Douglas* framework, Meredith failed to carry its burden that Bock had a legitimate, non-discriminatory reason for her decision.[22] Under this framework, once a plaintiff makes a *prima facie* case for discrimination, this "raises a presumption that his race motivated his employer to treat him unfavorably," and to rebut that presumption the employer must produce evidence that the employment "action was taken for some legitimate, non-discriminatory purpose." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011). The burden then shifts back to the plaintiff to show that the legitimate justification is pretext for discrimination. *Id.*

Judge Larkins found that Ossmann made a *prima facie* case for his discriminatory discharge claim and that Meredith met its burden of production because it presented evidence showing that Ossmann was fired because he sexually harassed his female co-workers.[23] Ossmann objects to this finding, arguing that the appropriate inquiry is whether the final decisionmaker, Bock, had

---

[22] *Id.* at 19–23.

[23] ECF 79, at 56.

a legitimate reason to terminate him, and that Meredith failed to produce any evidence of Bock's reason for termination.[24]

Incredibly, Ossmann argues that the EEO Analysis form, the same form he claims is direct evidence of Bock's discrimination,[25] cannot be evidence of Bock's actual motivations because it was created before Bock even knew about the proposed firing.[26] Indeed, within the same objection, and a mere three pages later, Ossmann states that "[t]he EEO Analysis was central to [Bock's] decision."[27]

Putting aside Ossmann's about-face, the Court disagrees and finds that the EEO Analysis can be considered as evidence of Bock's legitimate reason for approving Ossmann's termination. Ossmann relies primarily on the Eleventh Circuit's decision in *IMPACT v. Firestone* for the proposition that an employer must produce evidence from the decisionmaker herself about the actual reasons for her decision. 893 F.2d 1189, 1194 (11th Cir. 1990). But *IMPACT* did not limit the kinds of evidence employers can produce in support of their legitimate

---

[24]   ECF 87, at 19.

[25]   The form attached to Meredith's motion for summary judgment, ECF 62-20, and the form attached to Ossmann's response, ECF 71-4, are identical apart from the fact that the "risk analysis" is on the last page of Ossmann's exhibit.

[26]   ECF 87, at 20.

[27]   *Id.* at 23.

justification. Instead, the Eleventh Circuit rejected the employer's broad justification that its policy was to hire the most qualified person, where the justification was not based on "proof by any person who made the employment decision, *or by any other person*." *Id.* (emphasis added). Bock did not need to testify about the reason she approved Ossmann's termination to meet the burden of production. As Ossmann admits, the EEO Analysis form is evidence of what Bock received and reviewed with respect to Ossmann's termination, and it shows that the recommended reason for his termination was that he sexually harassed his co-workers in violation of Meredith's Discrimination and Harassment Policy.[28]

Nor does the fact that the EEO Analysis form mentions race as part of a "risk analysis" negate this legitimate justification. Ossmann cites *Smith*, in which the Eleventh Circuit found that a discipline "matrix," which indicated that race was a factor in disciplinary decisions, contributed to the circumstantial evidence from which a jury could infer discrimination. 644 F.3d at 1346. The Eleventh Circuit did not make this determination under the *McDonnell Douglas* framework, so this holding has no bearing on whether Bock's, and therefore Meredith's, justification is legitimate. This objection is overruled.

---

[28]  ECF 71-4, at 2 ("Business Rationale: Discharge for Policy Violation Sexual Harassment/Hostile Environment").

### C.   The Sham Affidavit (Objection 6)

An issue that implicates almost all of Ossmann's objections, apart from those regarding Bock, is whether Judge Larkins properly excluded Ossmann's declaration from consideration, which was submitted in opposition to summary judgment. Judge Larkins found that Ossmann could not use his declaration to alter the terms of Meredith's Discrimination and Harassment Policy by claiming recollection of a particular training—during which he was purportedly instructed on policies not contained in, or contrary to, Meredith's written Policy—after he repeatedly stated at deposition that he had no recollection of the training.[29] Specifically, Judge Larkins found that "Plaintiff may not rely on [the declaration] testimony to create an issue of fact as to the scope of Defendant's Discrimination and Harassment Policy."[30] Judge Larkins also found that the declaration was a sham with respect to Ossmann's statement that he was told by Doerr that he would not receive a warning for his conduct and that he did not violate any policies,[31]

---

[29]   ECF 79, at 7–13.

[30]   *Id.* at 13.

[31]   *Id.* at 19 n.2.

and also with respect to Ossmann's denials that he made certain comments to a female co-worker.[32]

Under the so-called sham affidavit rule, "when a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Santhuff v. Seitz*, 385 F. App'x 939, 944 (11th Cir. 2010) (quoting *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir.1984)). This rule prevents parties from trying to "escape summary judgment by using affidavits to create disputes on the material facts." *Benjamin v. Experian Info. Sols., Inc.*, No. 1:20-CV-2466-RWS, 2021 WL 4260887, at *11 (N.D. Ga. Sept. 20, 2021). In this way, it differs from a so-called self-serving affidavit or declaration, which, when non-conclusory, complies with Federal Rule of Civil Procedure 56 and can create a genuine dispute of material fact. *United States v. Stein*, 881 F.3d 853, 858–59 (11th Cir. 2018) (en banc).

Courts must apply this rule carefully, however, because "[a] definite distinction must be made between discrepancies which create transparent shams

---

[32] *Id.* at 21 n.9.

and discrepancies which create an issue of credibility or go to the weight of the evidence," which are appropriately determined by the trier of fact. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986); *Stein*, 881 F.3d at 858–59. To exclude an affidavit as a sham, the Court must find that the later statement contradicts clear testimony and that there is no valid reason for that contradiction. *See Van T. Junkins*, 736 F.2d at 656 ("[A] district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation."); *Santhuff*, 385 F. App'x at 945 (rejecting explanation for contradiction between testimonies as not "plausible").

Before turning to the actual statements in the declaration, the Court will address Ossmann's objection to Judge Larkins's discussion of Federal Rule of Civil Procedure 30(e), regarding the right to change deposition testimony.[33] Ossmann argues that, by doing so, Judge Larkins improperly added a factor into the legal standard.[34] The Court disagrees. Judge Larkins addressed Rule 30(e) because Ossmann raised it as a justification for the contradictions in his testimony,[35] not, as Ossmann insinuates, *sua sponte* as a factor in applying the sham affidavit rule.

---

[33]   ECF 87, at 38–39.

[34]   *Id.* at 39.

[35]   ECF 77-1, at 5–6.

In fact, Judge Larkins very clearly stated that he was *not* considering Ossmann's failure to correct his deposition testimony as a factor in the sham affidavit analysis.[36] This objection is overruled.

Ossmann objects to Judge Larkins's findings that paragraphs 12, 13, 14, 15, 16, 23, 25, 27, 28, and 31 in the declaration should be excluded from consideration under the sham affidavit rule. The Court agrees, and will sustain Ossmann's objections with one exception. The Court finds that paragraph 16 contradicts Ossmann's deposition testimony and that there is no valid explanation for this contradiction.

### 1.  Paragraphs 12–16

In paragraphs 12–16 of the declaration, Ossmann describes a training that he attended in early 2018,[37] during which he was told that Meredith's Discrimination and Harassment Policy applied to all types of abusive workplace behavior, not just harassment or discrimination based on a legally protected status, and that Meredith had a "zero tolerance policy" for harassment, but that the Policy only covered discrimination in the workplace.[38]

---

36   ECF 79, at 7.

37   ECF 71-3, ¶¶ 12–16.

38   *Id.*

At his deposition, however, Ossmann stated, repeatedly, that he did not recall the content of any discrimination or harassment training that he attended.[39] After being shown a document that listed the attendees of an anti-harassment training that occurred on March 12, 2018, including his own name, Ossmann was asked "does this now refresh your recollection that you would have gone through general anti-harassment training at CBS 46 on or about March 12, 2018?"[40] This is an unambiguous question to which Ossmann responded, "Yes."[41] Then, after confirming that his recollection was refreshed, Ossmann was asked "does that refresh your recollection at all as to the content of the training?"[42] Another unambiguous question to which Ossmann responded, "No."[43] His declaration, in which he provides multiple, specific details about the training, clearly contradicts his prior deposition testimony.

Ossmann claims that his recollection was refreshed "about a number of events" after he reviewed almost 300 documents, and faults defense counsel for

---

[39]   ECF 62-8, at 65–69 (Ossmann Depo at 65:25–69:24).

[40]   Ossmann Depo at 68:23–69:13.

[41]   *Id.* at 69:14.

[42]   *Id.* at 69:22–23.

[43]   *Id.* at 69:24.

only showing him one document to refresh his recollection.[44] Ossmann's declaration did not describe what documents he reviewed, besides referencing a bates label range of 287 documents, or why these documents refreshed his recollection.[45] Though the Court does not fault defense counsel for showing Ossmann only one document after he confirmed that his recollection was refreshed, it agrees with Ossmann that paragraphs 12-15 of his declaration are consistent with Meredith's written Discrimination and Harassment Policy,[46] and so his recollection about the training could plausibly have been refreshed by reviewing the Policy. *See Cortes v. Broward Cty., Fla.*, 758 F. App'x 759, 764 (11th Cir. 2018) (officer's review of video recording of incident was valid explanation for contradictory testimony). *Cf. Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011) (affiant did not state that her memory was refreshed and counsel's argument that her memory was refreshed after the deposition was not evidence).

Paragraph 16, however, discusses Meredith's purported "zero-tolerance policy" for unlawful harassment, under which, as Ossmann claims, "any person who engaged in behavior that was found to be sexual or racial or other legally

---

[44]   ECF 87, at 44.

[45]   ECF 71-3, ¶ 11.

[46]   ECF 87, at 47–49.

prohibited harassment would be immediately terminated,"[47] but Meredith's Employee Handbook (the Handbook) does not reference this policy. Instead, it states: "If you are found to have committed discriminatory harassment, retaliation, or serious related behaviors, you may be disciplined up to and including discharge."[48] Paragraph 16 not only contradicts Ossmann's clear testimony that he could not remember the contents of any training, but it contradicts documents he claims to have reviewed to refresh his memory. The only plausible explanation for Ossmann's sudden recollection of this specific detail about Meredith's Discrimination and Harassment Policy is that he wants to create a dispute of material fact with respect to the consistency with which Meredith applies its disciplinary policies. The Court agrees with Judge Larkins's conclusion that Paragraph 16 is a sham because Ossmann has not provided a valid explanation for his contradictory testimony. So, the Court disregards it.

### 2. Paragraphs 23, 25, 27, 28, and 31

The Court agrees with Ossmann that, for the reasons he identified,[49] paragraphs 23, 25, 27, 28, and 31 do not contradict his deposition testimony or the

---

47   ECF 71-3, ¶ 16.

48   ECF 62-19, at 21.

49   ECF 87, at 32–38.

documents he purportedly reviewed to refresh his memory. His objections related to these paragraphs are sustained.

### D.    Judge Larkins Did Not Disregard Paragraph 17 in Ossmann's Declaration (Objection 4)

Ossmann objects to the statements in the R&R concerning paragraph 17 of his declaration, in which he describes what he was told about Meredith's "written warning" policy—the fact that "all written disciplinary warnings [were required] to identify the specific conduct covered and the specific policy violated, and must be signed by the employee."[50] Ossmann argues that Judge Larkins improperly found that the statement is inadmissible and improperly weighed the probative value of the statement.[51] But Judge Larkins did not find paragraph 17 was inadmissible or lacked credibility. Though Judge Larkins questioned the competency of the statement and rejected Ossmann's argument that, absent a written warning, it can be inferred that no violation occurred, he assumed that the statement was "competent and believed" for purposes of his analysis.[52] Ossmann's objection is unfounded and, therefore, is overruled.

---

50   *Id.* at 17–21, 25.

51   *Id.* at 25.

52   ECF 79, at 61–62.

### E.   It Is Not a Reasonable Inference That Only Admitted Conduct Would Be Disciplined (Objection 5)

#### 1.   Characterization of the Record

Ossmann argues that Judge Larkins misstated the record in finding that Ossmann refused to sign his second disciplinary writeup.[53] Specifically, Ossmann argues that he did not "simply refus[e] to sign a disciplinary writeup" in order to "avoid any consequences related to . . . incidents of harassment" as the R&R posits.[54] As discussed above, Ossmann's declaration is not a sham on this point. His affidavit and declaration are consistent with his contention that he only saw his second writeup after his counsel discovered it in this litigation, so he is due that inference. The court sustains this objection.

#### 2.   The Unwritten, Written Policy[55]

Ossmann objects to Judge Larkins's rejection of his theory that Meredith's policy was that only admitted, policy-violating conduct would result in discipline.[56] Based on this inference, Ossmann reasons, a reasonable jury could

---

[53]   ECF 87, at 29.

[54]   *Id.* at 29–31.

[55]   Though it passes the sham affidavit test above, the irony that Meredith would *verbally* communicate to employees a disciplinary policy that strictly requires *written* notice is not lost on the Court.

[56]   *Id.* at 21–26.

find that he did not violate Meredith's Discrimination and Harassment Policy because he was only disciplined for a non-policy violation.[57] Judge Larkins rejected this theory, finding that the evidence did not support it.[58] The Court agrees.

Ossmann bases his theory on the fact that: (1) the written warning he received on May 15, 2017, was for "exercising poor judgment" related to a statement he admitted, not statements he denied; (2) the written warning did not mention a policy violation; and (3) a coworker, Sharon Reed, did not admit to the abusive conduct she was accused of and was not disciplined for it.[59] Assuming, as Judge Larkins did, that these facts are admissible and credible, the Court still cannot draw a reasonable inference that Meredith had a policy of only disciplining admitted conduct.

Ossmann is trying to prove a negative. He argues that the absence of written discipline for two instances of unadmitted conduct supports a finding that a written discipline will *never* result from unadmitted conduct. But Meredith's alleged breach of its own purported written discipline policy does not bear on

---

[57]   *Id.* at 21.

[58]   ECF 79, at 61–63.

[59]   ECF 87, at 22–26.

Ossmann's breach of the Discrimination and Harassment Policy.[60] That Ossmann did not receive or sign a writeup does not mean that he neither engaged in nor was counseled for the complained of conduct, which—in each instance—violated the letter of the Discrimination and Harassment Policy.[61] Indeed, Ossmann does not dispute that he was called in to meet with his supervisors and the local Human Resources director for each alleged violation of the Policy.

Furthermore, regarding Reed as an exemplar, Ossmann offers no evidence that she was subjected to a different protocol. Even crediting his allegation of Meredith's phantom written discipline policy, and assuming that only admitted conduct resulted in discipline, "he has not identified any evidence that the procedure for dispensing written warnings was discriminatorily applied."[62] And that is the critical question where pretext is concerned. *Rojas v. Fla.*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002).

---

[60]   ECF 79, at 62.

[61]   ECF 62-8, at 11; *cf.* ECF 62-19, at 10 ("Examples of conduct or material that might constitute sexual harassment include unwelcome sexual jokes or innuendoes, sexual stories, sexual objects, sexual gestures, inappropriate sexual contact, leers, stares, whistles, and blocking a path or exit.").

[62]   ECF 79, at 63 n.28.

Ossmann's entire objection here not only strains logic, but is wholly insufficient to create an issue of material fact at this stage. "To defeat a motion for summary judgment, a plaintiff must present *affirmative* evidence showing a genuine issue of material fact." *Akridge v. Alfa Mut. Ins. Co.,* 1 F.4th 1271, 1276 (11th Cir. 2021) (emphasis added). Ossmann has failed to put forth any affirmative evidence from which a factfinder could reasonably infer that only admitted conduct resulted in discipline.

### 3.    Reed as a Comparator

In his fifth objection, it seems that Ossmann attempts to compare (without expressly saying so) news anchor Sharon Reed in order to prove the final element of his *prima facie* case of disparate treatment.[63] Ossmann describes how Meredith handled complaints about Reed's alleged conduct in the newsroom in support of his argument that Meredith had a policy that limited discipline to admitted conduct only.[64] However, the Court need not grapple with the substance of Ossmann's comparisons with Reed because she is not a proper comparator for Section 1981 purposes.

---

[63]   ECF 87, at 34. This is a charitable reading of Ossmann's objection, which, much like his other objections, lacks a coherent structure, often contradicts itself, and fails to clearly demonstrate its role in resolving the underlying issues.

[64]   *Id.* at 29.

To give rise to an inference of discrimination, "a comparator must be 'similarly situated in all material respects,' meaning that the plaintiff and comparators are 'sufficiently similar, in an objective sense, that they cannot reasonably be distinguished.'" *Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021) (quoting *Lewis v. City of Union City*, 918 F.3d 1213, 1218, 1228 (11th Cir. 2019) (en banc)). Judge Larkins notes, and Ossmann does not contest, that "[t]he determination as to whether an individual is similarly situated is highly case-specific."[65] But "a similarly situated comparator will ordinarily (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment history." *Id.* (citing Lewis, 918 F.3d at 1227-28).

The Court sustains Ossmann's objection as to the second element—that Reed and Ossmann were subject to the same policy. Judge Larkins concluded that the Discrimination and Harassment Policy does not prohibit generically abusive or disrespectful behavior.[66] Not so. As Ossmann points out, the Policy gives Meredith the authority to sanction inappropriate workplace behavior of all sorts:

---

[65]   ECF 79, at 45 (cleaned up) (citation omitted).

[66]   *Id.* at 51.

"All employees are expected to treat one another with respect. Behavior that may not rise to the level of unlawful activity, but may be considered offensive or inappropriate for the workplace, may violate this policy."[67]

However, Ossmann's fixation on the Policy's wide latitude is a double-edged sword. In his objections, Ossmann goes to great lengths to attempt to show that he and Reed were similarly situated. Notwithstanding certain liberties he takes with the facts,[68] Ossmann fails to establish that Reed was accused of the same sort of conduct that he was.

Reed purportedly engaged in "abusive" behavior characterized by "hostility or anger" or "the silent treatment," such that other employees recommended that she participate in "empathy training." The multitude of allegations concerning Reed is thoroughly detailed in the R&R and will not be repeated here.[69] As Judge Larkins pointed out, and Ossmann does not contest, "none of [Reed's] ill-mannered and abusive behavior implicated sex," and "sexual

---

[67]  ECF 62-19, at 10.

[68]  For example, Ossmann argues that Reed's supervisors "found [her] to be delusional about her interactions with complaining coworkers" when they actually found her to be "delusional about her reputation" insofar as she believed "many people admir[ed] her." *Compare* ECF 87, at 32, *with* ECF 71-9.

[69]  ECF 79, at 46–47.

impropriety is categorically different from other misconduct when it comes to comparator evidence in discrimination cases."[70] So, even if Reed and Ossmann were both subject to the Discrimination and Harassment Policy, it cannot be said or inferred that they engaged in similar conduct from this record. The first element is unmet.

Furthermore, Ossmann did not object to Judge Larkins's finding that he and Reed did not have similar employment histories. Finding no clear error, the Court adopts the R&R's reasoning in this regard. The fourth element is unmet.

Ossmann and Reed might have shared supervisors and been subject to the same Discrimination and Harassment Policy, but their demonstrably different conduct and employment histories preclude them from being comparators for Section 1981 purposes. The Court overrules Ossmann's objections on these points

---

[70]  *Id.* at 50 (citing *Williams v. Hous. Auth. of Savannah*, No. CV418-198, 2020 WL 420817, at *7 (S.D. Ga. Jan. 27, 2020) (noting the loss of the master keys for all locks in multiple apartment complexes was not similar to sexual harassment), aff'd, 834 F. App'x 482 (11th Cir. 2020); *Kavianpour v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:20-CV-00152-MLB-RGV, 2021 WL 2638999, at *20 (N.D. Ga. Jan. 28, 2021) (driving under the influence offense is not similar to watching sexually explicit videos and visiting pornographic websites), *report and recommendation adopted as modified*, 2021 WL 2635854 (N.D. Ga. Mar. 29, 2021), *reconsideration denied*, 2021 WL 3285445 (N.D. Ga. Aug. 2, 2021); *Lewis v. Montgomery Fitness, Inc.*, No. 2:17-CV-407-ECM, 2019 WL 2126702, at *4 (M.D. Ala. May 15, 2019) (distinguishing sexual harassment from other workplace offenses).

and adopts the R&R's reasoning as modified. Because he has failed to offer a valid comparator, Ossmann has not established a *prima facie* case of disparate treatment. *Ward v. Troup Cnty. Sch. Dist.*, 856 F. App'x 225, 228 (11th Cir. 2021) (finding the plaintiff failed to establish a prima facie case of race discrimination where he failed, inter alia, to identify a "similarly-situated comparator who was treated more favorably than he was"). Summary judgment is granted on this claim.

## F.    The R&R Correctly Found That No Dispute of Material Fact Exists as to Pretext (Objections 7 and 8)

With Ossmann's disparate treatment claim resolved, the Court next turns to his objections to Judge Larkins's resolution of his discriminatory discharge claim. On this claim, Judge Larkins found that Ossmann satisfied his *prima facie* burden under *McDonnell Douglas*, and, finding no clear error, the Court agrees. The Court, relying on the above *de novo* analyses, concludes that Meredith has met its counter-burden of production in support of its legitimate, nondiscriminatory reasons for terminating Ossmann: his allegedly repeated conduct in violation of Meredith's Discrimination and Harassment Policy, despite guidance he admittedly received (regardless of any written discipline) on three separate occasions.[71] Now, the burden shifts back to Ossmann to prove Meredith's proffered rationale for his

---

[71]    ECF 79, at 56.

termination was pretext, which he can only accomplish with much of the same circumstantial evidence the Court has already analyzed. *Berber v. Wells Fargo, NA*, 798 F. App'x 476, 478 (11th Cir. 2020).

As the R&R correctly explains, "[a] plaintiff may establish pretext either 'directly by persuading the [C]ourt that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"[72] "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Baker v. Russell Corp.*, 372 F. App'x 917, 920 (11th Cir. 2010) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (quotation marks omitted)). And a mixed motive theory will not do under Section 1981. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015, 1017-19 (2020) (noting that the lesser causation burden on a Title VII plaintiff asserting mixed motive or motivating factor theories does not apply in the § 1981 context). Ossmann cannot "establish that [Meredith's] proffered reason is pretextual merely by questioning the wisdom of [it], so long as the reason is one

---

[72] ECF 79, at 57 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804–05)).

that might motivate a reasonable employer." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001).

Ossmann asserts that even if Bock were a mere rubberstamp, as Judge Larkins concluded, summary judgment on his discriminatory discharge claim would be inappropriate. As detailed above, the Court parts from Judge Larkins on that point, so it need not consider the bulk of this objection. Ossmann also objects to the R&R's "work rule" pretext and "mistaken good faith belief" analyses, as well as Judge Larkins's rejection of his "convincing mosaic" arguments. Finally, Ossmann objects to Judge Larkins's "cat's paw" analysis. The Court discusses each, in turn.

### 1. Mistaken Good Faith Belief and the Work Rule

Ossmann's pretext argument hinges on the so-called "work rule," and he objects to the R&R's conclusion that the work rule did not apply on several grounds—his April 5, 2016 writeup does not say he violated the Discrimination and Harassment Policy; he never received final written discipline on May 15, 2017 regarding the second complaint, which is consistent with his testimony that his supervisor told him no policy violation occurred; he did not admit the conduct alleged in the third complaint on December 6, 2019, so he could not have been disciplined for it under Meredith's purported "agreed-to-discipline" rule; and he

was not fired under Meredith's "zero tolerance policy" for sexual harassment.[73] The Court has already dispensed with these theories, so these objections are overruled per the above analyses.

As Judge Larkins notes, the "pretext inquiry focuses on the honesty of the employer's explanation; raising a question about the correctness of the facts underlying that explanation without impugning the employer's honest belief, fails to create a triable pretext issue." *Dawson v. Henry Cnty. Police Dep't*, 238 F. App'x 545, 549 (11th Cir. 2007). Accordingly, the work rule does not apply to an employer "who fires an employee under the mistaken but honest impression that the employee violated a work rule." *Damon*, 196 F.3d at 1363. *See also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

Here again, Judge Larkin's gets it right: Ossmann "testified[ ] he understood that [Meredith] had a policy against workplace sexual harassment; understood that inappropriate sexual jokes, innuendo, stories, or displays were 'violations of company policy'; and knew that he had been disciplined by Defendant [for as many as] three incidents of harassment."[74] Meredith purportedly terminated

---

[73] ECF 87, at 63–64.

[74] ECF 79, at 61. *See also* ECF 62-7, at 72–73 ("Q: Mr. Ossmann, how many incidents of discipline were you subject to while you were employed at CBS 46? A: I think three.").

Ossmann for his violation of Meredith's Policy "against sexual harassment in the workplace."[75]

Ossmann's "burden [was] to show not just that [Meredith's] proffered reasons for firing [him] were ill-founded but that unlawful discrimination was the true reason." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010) (stating that "the fact that [the plaintiff] thinks more highly of her performance than her employer does is beside the point"). For these reasons and those discussed above, Ossmann has not impugned Meredith's rationale for terminating him. Thus, whether he believes he violated the Discrimination and Harassment Policy—or any other policy—is irrelevant.

Accordingly, the Court overrules Ossmann's objections as to Judge Larkins's work rule analysis and adopts it. Moreover, the Court overrules Ossmann's related objection requesting that the R&R's "mistaken good faith belief" analysis be rejected because good faith belief was not raised as an affirmative defense.[76] Ossmann has not offered any authority suggesting that an employer's mistaken good faith belief that an employee violated a rule is a waivable affirmative defense, rather than part of the work rule analysis. It is,

---

[75]   ECF 62-2, ¶ 49.

[76]   ECF 87, at 59.

however, bedrock law that Ossmann must have adduced evidence to impugn Meredith's good faith belief, even if mistaken, that he violated its Discrimination and Harassment Policy. He has not. Therefore, based on the foregoing reasons, the Court grants summary judgment on Ossmann's discriminatory termination claim.

### 2.  Convincing Mosaic

Judge Larkins also concluded that Ossmann could not defeat summary judgment by showing a convincing mosaic of evidence that would allow a jury to conclude that he had been subject to racial discrimination.[77] This is an alternative method to establishing a Section 1981 violation.[78] *King v. Ferguson Enters., Inc.*, 971 F. Supp. 2d 1200, 1217-18 (N.D. Ga. 2013), *aff'd*, 568 F. App'x 686 (11th Cir. 2014). It is also a means of proving a defendant's pretext. *Id.*

Judge Larkins noted that three categories of circumstantial evidence can be relevant to a "convincing mosaic" theory: (1) bits and pieces of evidence from which a jury might draw an inference of discriminatory intent; (2) systematically better treatment of those outside the relevant protected class; and (3) pretext in the employer's justification for the adverse action against the plaintiff.[79] Ossmann

---

[77]  ECF 79, at 66–70.

[78]  *Id.* at 66.

[79]  ECF 79, at 66–67 (citing *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 976 (11th Cir. 2014)).

does not object to the R&R's recitation of the law on this point, but objects to the conclusion it reached.

Ossmann contends that the combination of the EEO Analysis (along with Meredith's effort to withhold the document during discovery as protected by privilege), Meredith's purportedly pretextual explanations about the basis for Ossmann's three alleged violations of the sexual harassment policy, and the allegation that he was treated differently than Reed, are sufficient evidence for a jury to find that Meredith terminated Ossmann based on his race.[80]

The Court has addressed many of these objections above, and has already ruled out systematically better treatment of others outside of the protected class and pretext in Meredith's justification, as well as many of the "bits and pieces from which an inference of discriminatory intent might be drawn." *Smith*, 588 F. App'x at 976. The only category that remains unaddressed is Judge Larkins's finding that Meredith's ultimately unsuccessful effort to withhold the EEO Analysis during discovery did not evidence pretext.

As Judge Larkins concluded, and this Court likewise finds, "the EEO Analysis tells the Court nothing by itself."[81] Ossmann encourages the Court to look

---

[80]   ECF 87, at 65–69.

[81]   ECF 79, at 67.

past the form's contents and infer pretext from Meredith's prior assertion of privilege, a routine legal exercise. Judge Larkins panned Ossmann's inapposite authorities, which included a 125-year-old murder case and an antitrust appeal on the sufficiency of the plaintiff's allegations, because they did not answer the critical question—"what is the evidentiary significance of a failed good faith attempt to assert that a document is privileged during discovery?"[82] Ossmann did not object to this characterization, and the Court, finding no clear error, adopts it.

This time, Ossmann offers similarly inapposite authorities—a non-binding embezzlement case out of the Fifth Circuit, *United States v. Strickland*, 509 F.2d 273, 276 (5th Cir. 1975), and an obstruction prosecution, *United States v. Wilson*, 788 F.3d 1298, 1311 (11th Cir. 2015)—which, again, fail to address the key question. More fundamentally, these authorities neither speak to civil discovery practice, nor explain how a post-litigation discovery dispute can serve as evidence of pre-litigation pretext. In the absence of any authority to the contrary, the Court adopts Judge Larkins's reasoning.

The Court concludes that Ossmann's proffered mosaic of evidence is not sufficient to defeat summary judgment. There is no triable issue of fact as to

---

[82] *Id.* at 69.

Meredith's intent. *Smith*, 644 F.3d at 1328. Ossmann's objections are overruled on this point.

### 3. Cat's Paw Causation

Ossmann further asserts that, even if Bock was not the final decision maker in his termination, Doerr and Banks used her as a "conduit" to carry out their own racially discriminatory reasons for terminating his employment.[83] Notwithstanding that the Court finds that Bock was the final decision maker for purposes of this Order, Ossmann's "cat's paw" theory fails because he has still not supported his *prima facie* burden under *McDonnell Douglas* to show that he was treated differently from similarly situated employees, or that Meredith's reasons were pretextual. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (under a "cat's paw" theory, a plaintiff must "prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee.").

---

[83]   ECF 87, at 64.

### G.  Ossmann's Breach of Contract Claim (Objection 9) and Remaining Claims

Judge Larkins concluded that Ossmann's "perfunctory" response to Meredith's argument that it was entitled to summary judgment on Ossmann's breach of contract claim was insufficient to prevent abandonment of that claim.[84] The R&R also determined that Ossmann's contract permitted Meredith to terminate him for "cause," if Meredith's discretion was not exercised "arbitrarily or capriciously."[85] Judge Larkins concluded that Ossmann could not show his termination was arbitrary or capricious, and recommended that Meredith's summary judgment motion be granted as to this claim as well.[86]

Ossmann objects to this determination, but he provides no argument other than stating that Meredith breached the contract because it based its decisions on unlawful race discrimination.[87] As discussed above, Ossmann's claims of racial discrimination under Section 1981 do not survive summary judgment. As a result, he has not shown a dispute of material fact about whether Meredith acted

---

[84]  ECF 79, at 70–72.

[85]  *Id.* at 72.

[86]  *Id.* at 72–74.

[87]  ECF 87, at 70.

arbitrarily or capriciously. Judge Larkins did not err in concluding that Meredith is entitled to summary judgment on Ossmann's breach of contract claim.

That leaves Ossmann's claims for malicious conduct, nominal damages, and litigation expenses. Meredith's summary judgment motion sought judgment as a matter of law "on each of [Gould's] claims."[88] Ossmann's response to that motion did not address these claims.[89] Judge Larkins, reviewing both filings, recommended that this Court grant Meredith's summary judgment motion. Ossmann did not object to Judge Larkins's recommendation with respect to these claims.[90] Finding no clear error, the Court adopts the R&R in this regard and grants Meredith's summary judgment motion as to these claims.

## IV.    CONCLUSION

The Court **GRANTS** Ossmann's motion for leave to file a reply [ECF 93] and **SUSTAINS IN PART AND OVERRULES IN PART** Ossmann's objections [ECF 87]. The Court **ADOPTS** the R&R as modified. Meredith's summary judgment motion [ECF 62] is **GRANTED**.

---

[88]   ECF 62-1, at 2.

[89]   *See generally* ECF 71.

[90]   *See generally* ECF 87.

The Clerk is **DIRECTED** to enter judgment against Ossmann, and to close this case.

**SO ORDERED** this 31st day of March, 2022.

_____
Steven D. Grimberg
United States District Court Judge